UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTOINETTE TYRER,

      Plaintiff,

v.                                     Case No:   8:18-cv-707-T-DNF

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

## OPINION AND ORDER

Plaintiff, Antoinette Tyrer, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed memoranda setting forth their respective positions. With leave of Court, Plaintiff filed a Response to Defendant's Memorandum (Doc. 33) on January 31, 2019. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

## B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful

employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair

record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for SSI on May 24, 2016, alleging disability beginning October 28, 2010. (Tr. 329-37). Plaintiff's claim was initially denied on July 7, 2016, and upon reconsideration on August 29, 2016. (Tr. 208, 224). Plaintiff requested a hearing, and, on May 15, 2017, an administrative hearing was held before Administrative Law Judge Joseph F. Dent ("the ALJ"). (Tr. 32-67). Following the hearing, the ALJ issued an unfavorable decision on August 30, 2017, finding that Plaintiff was not disabled. (Tr. 10-23). Plaintiff requested review of the ALJ's decision but, on January 19, 2018, the Appeals Council denied review. (Tr. 1-6). Accordingly, the ALJ's decision became the Commissioner's final decision. Plaintiff initiated the instant action by Complaint (Doc. 1) on March 26, 2018.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 23, 2016, the application date. (Tr. 12). At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder; major depressive disorder; generalized anxiety disorder; borderline personality disorder; opioid and alcohol dependence, in remission; osteoarthritis of the left shoulder with a partial tear of the supraspinatous

tendon; degenerative disc disease of the thoracic spine and multi-level thoracic spine compression fracture. (Tr. 12). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 416.967(b) except:
>
> occasional pushing and pulling with the left, non-dominant upper extremity; frequent bilateral foot control operation; occasional climbing or ramps and stairs, balancing, stooping, kneeling, crouching and crawling; never climb ladders, ropes or scaffolds; occasional overhead reaching with the left non-dominant upper extremity; frequent reaching in all other directions and handling and fingering with the same extremity: avoid concentrated exposure to excessive vibration and irritants, such as fumes, odors, dust, gases and poorly ventilated areas: avoid all exposure to hazardous machinery and unprotected heights; work is limited to simple, routine, repetitive tasks in a low stress job, defined as having only occasional decision-making, changes in work setting and in-person interaction with coworkers and supervisors, and no interaction with the public.

(Tr. 14). At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 24).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 21). Relying on the testimony of the vocational expert, the ALJ found that Plaintiff could perform such jobs as retail marker, garment sorter, and laundry folder. (Tr. 22). The ALJ concluded that Plaintiff had not been under a disability since May 23, 2016, the date the application was filed. (Tr. 10-23).

## II. Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ's RFC finding is supported by substantial evidence; (2) whether the ALJ erred by rejecting the opinion of the examining psychologist; and (3) whether the ALJ erred by improperly rejecting Plaintiff's allegations. The Court will address each issue in turn.

**(a) Whether the ALJ's RFC finding is supported by substantial evidence.**

Plaintiff argues that the ALJ erred in considering Plaintiff's RFC by failing to properly consider the objective medical evidence documenting significant thoracic spine abnormalities and pain. (Doc. 25 p. 13). Plaintiff argues that the ALJ failed to properly evaluate the medical evidence from Dr. Dinenberg whose treatment notes contain significant evidence of thoracic spine abnormalities. (Doc. 25 p. 15). Further, Plaintiff argues that the ALJ improperly claimed that Plaintiff was "uninterested" in surgery for her back and improperly engaged in "sit and squirm jurisprudence."

In response, Defendant argues that the ALJ properly considered Plaintiff's impairment related to her thoracic spine and multi-level thoracic spine compression fracture. (Doc. 29 p. 6-9). Further, Defendant argues that the ALJ properly considered Plaintiff's daily activities and appearance during the administrative hearing. (Doc. 29 p. 7).

The record shows that on November 9, 2016, William Dinenberg, M.D., examined Plaintiff due to thoracic spine pain. (Tr. 1123). He noted her history of a gunshot wound in 2010, which entered through the thoracic rib cage with the shell remaining, and a subsequent motor vehicle accident in 2011 resulting in a compression fracture. (Tr. 1123). Plaintiff reported a history of treatment including immobilization, injections, nerve ablation, and physical therapy without pain relief, and reported that she "is avoiding narcotic pain medication" due to her history of alcohol

abuse. (Tr. 1123). Upon examination, Dr. Dinenberg noted tenderness to palpation of the thoracic spine, and noted:

> CT of the thoracic spine as per report reveals a metallic object at the level of the right 10th rib head. There are multiple chronic posttraumatic deformities of the thoracic spine T4 through T10. No acute abnormalities are noted. At T4 there is a chronic compression fracture deformity involving the vertebral body lateralizing to the right with associated fusion of the right rib to the spinous process and pedicle. There is approximately 70% loss of vertebral body height in the right paramedian location. Severe degenerative disk disease with vacuum phenomenon at T4-T5 without evidence of disc herniation or central canal stenosis. Mild compression fracture at T5. There is a post-traumatic chronic T9 compression fracture with loss of less than 50% of vertebral body height.

(Tr. 1123). Dr. Dinenberg noted, "[t]his is a chronic problem"' and prescribed physical therapy three times a week for six weeks, consideration of "possible operative management including fusion surgery", and stated "[g]iven the patient's history of overuse of alcohol and the chronic nature of this problem, I do not recommend she take narcotic medication and that she attempt to handle her pain with nonsteroidal anti-inflammatory medication." (Tr. 1123).

On January 5, 2017, Dr. Dinenberg re-reviewed a CT scan of the thoracic spine, noting that it indicated "significant posttraumatic deformities of her thoracic spine including a vertebral body compression fracture involving at least 70% of the vertebral body height with significant kyphotic deformity." (Tr. 1117). Dr. Dinenberg noted that Plaintiff had completed physical therapy, which improved her posture, but did not improve her pain. (Tr. 1117). Upon examination, Dr. Dinenberg noted no change from the prior visit, with thoracic spine tenderness at the midline and upper region. (Tr.. 1117). He recommended possible decompression and fusion of the thoracic spine, and noted that "[w]e can try to get her scheduled for surgery when she feels her pain is severe enough." (Tr. 1117).

In his decision, the ALJ addressed the evidence from Dr. Dinenberg as follows:

> The record also shows that the claimant has a history of degenerative disc disease (DDD) of the thoracic spine and multi-level thoracic spine compression fracture stemming from her old gunshot wound (Exhibit B11F). However, there minimal treatment records for back and left shoulder pain throughout the record and examinations of the claimant note full 5/5 strength in all extremities with a full range of motion and no gross motor dysfunction in spite of little or no physical treatment (Exhibit B8F).
>
> The claimant did report to the hospital complaining of pain in her thoracic spine in November of 2016, but she denied any numbness or weakness at that time and was noted to have a normal, non-antalgic gait (Exhibit B11F). It was expressly noted that the claimant was able to climb on the examination table independently and had a negative straight leg raise (Exhibit B11F). The claimant was advised at that time that if a second round of physical therapy was not effective, she should consider a fusion therapy given that her history of addiction precludes her from opioid pain treatment (Exhibit B11F). In January of 2017, the claimant was again noted to have a normal gait and was again advised that time that she was a candidate for back surgery (Exhibit B11F).
>
> Based on the foregoing, the undersigned has no doubt that the claimant experiences pain in the back and left shoulder. However, there is minimal evidence of complaints and treatment for back pain in the record, and the claimant has thus far been uninterested in undergoing back surgery even though she was advised that this could improve her pain. This lack of treatment suggests that the claimant's left shoulder and back pain is not as painful or limiting as alleged, a conclusion that is supported by her overall high functionality. To reiterate, the claimant is able to handle tasks such as shower, dress, eat, shop, prepare simple meals, perform light household chores, care for dog and mother, watch television, attend Alcoholics and Narcotics Anonymous (AA/NA) meetings, go to church and volunteer with the homeless (Exhibits B1E; B4E; B7E; B4F; B7F; hearing testimony). Accordingly, she seems well-able to perform work at the light exertional level with the added postural, manipulative and environmental restrictions noted above, which account for her back and left shoulder pain.

(Tr. 16-17).

At the fourth step in the evaluation process, the ALJ is required to determine a claimant's RFC and based on that determination, decide whether the plaintiff is able to return to his or her previous work. *McCruter v. Bowen,* 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of a claimant's RFC is within the authority of the ALJ and along with the claimant's age education,

and work experience, the RFC is considered in determining whether the claimant can work. *Lewis v. Callahan,* 125 F.3d 1436, 1440 (11th Cir. 1997). The RFC is the most a plaintiff is able to do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). In determining whether Plaintiff can return to her past relevant work, the ALJ must determine the Plaintiff's RFC using all of the relevant medical and other evidence in the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004), 20 C.F.R. §404.1520(e).

In this case, the Court finds that the ALJ erred by failing to properly evaluate Plaintiff's RFC. As the block quote above shows, although the ALJ generally considered Dr. Dinenberg's examination notes, there is no indication that the ALJ specifically considered the examination findings showing significant evidence of thoracic spine abnormalities. The ALJ found that "there [are] minimal treatment records" for back pain. (Tr. 16). The ALJ then referenced the November 2016 examination with Dr. Dinenberg, but noted only that Plaintiff could get on and off the examination table, had a negative straight leg raise, and that physical therapy was recommended. (Tr. 17). While the ALJ noted Plaintiff's "history of degenerative disc disease" and "multilevel thoracic spine compression fracture", no discussion was provided of the impact of this impairment. (Tr. 16). A September 2016 CT scan of the left shoulder incidentally showed evidence of spinal trauma with fracture at T4, resulting in 80% loss of vertebral body height and posttraumatic damage of the upper thoracic spine. (Tr. 1068-69). Subsequently, Plaintiff sought treatment from Dr. Dinenberg in November 2016, who noted her history of a gunshot wound in 2010, which entered through the thoracic rib cage with the shell remaining, and a subsequent motor vehicle accident in 2011 resulting in a compression fracture. (Tr. 1123).

The ALJ found that "the claimant has thus far been uninterested in undergoing back surgery even though she was advised that this could improve her pain." (Tr. 17). The hearing was held

only four months later, and, while Plaintiff had not yet undergone surgery, there is no indication in the record that Plaintiff was "uninterested" in surgery. Rather than appear "uninterested" in seeking treatment for her back, Plaintiff underwent six weeks of physical therapy at Dr. Dinenberg's recommendation. (Tr. 1117).

The Court is mindful that there is no rigid requirement that the ALJ specifically refer to every piece of evidence. However, in the instant case, the evidence the ALJ failed to specifically address touches upon the heart of Plaintiff's disability claim, showing significant abnormalities, confirmed by objective imaging, of Plaintiff's thoracic spine. As Plaintiff notes, the medical record lacks any opinion commenting on the functional limitation Plaintiff's thoracic spine abnormalities cause. Thus, the ALJ's failure to specifically address this evidence is rendered even more problematic. On remand, the Court will require the ALJ to order a consultative medical examination to determine the functional limitation caused by Plaintiff's thoracic spine abnormalities.

**(b) Whether the ALJ erred by rejecting the opinion of the examining psychologist.**

Plaintiff argues that the ALJ erred in rejecting the opinion of examining psychologist Glenda Faulkner, Ph.D. (Doc. 25 p. 18). Plaintiff argues that the reasons the ALJ provided for rejecting the opinion are unsupported by substantial evidence. (Doc. 25 p. 20). Further, Plaintiff argues that the ALJ failed to acknowledge Dr. Faulkner's status as an examining source and improperly accorded greater weight to the opinions of non-examining sources. (Doc. 25 p. 20). In response, Defendant argues that the ALJ provided good reasons, supported by substantial evidence, for giving little weight to Dr. Faulkner's opinion. (Doc. 29 p. 10-).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms,

diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

The record shows that on March 27, 2017, Dr. Faulkner examined Plaintiff and completed a Medical Source Statement form at the Commissioner's request. (Tr. 1036-43). The Commissioner provided Dr. Faulkner with a June 15, 2016 record from the Health Department. (Tr. 1037) (referring to Tr. 1014-18). Dr. Faulkner summarized Plaintiff's history and noted her medications of Abilify, Remeron, Zoloft, and Topamax, and that Plaintiff had been sober for five years. (Tr. 1038). She also summarized Plaintiff's activities of taking care of her dog, preparing "basic food such as sandwiches and microwave meals", her inability to perform household chores due to pain, and her ability to grocery shop independently, and no attendance of social gatherings. (Tr. 1038). Dr. Faulkner noted that "[t]he current level of mental health symptom would best be characterized as moderate to severe." (Tr. 1038).

The mental status examination indicated "fair" attention and concentration but "[m]ental flexibility appeared to be impaired as she was unable to spell the word 'world' backward and complete simple tasks of serial calculations without errors." (Tr. 1039). Expressive language was also "fair as she was unable to complete all written tasks presented without errors." (Tr. 1039). In addition, Plaintiff "demonstrated moderately impaired mental computation as [she] was unable to complete basic verbal arithmetic problems without errors." (Tr. 1039). Dr. Faulkner also noted

that Plaintiff "displayed impaired social skills. Abstract reasoning appeared significantly below expectation for age. Judgment related to self-care and social problem-solving appeared to be limited…." (Tr. 1039).

Dr. Faulkner diagnosed generalized anxiety disorder; unspecified alcohol-related disorder; unspecified opioid-related disorder; and major depressive disorder, recurrent episode, mild. (Tr. 1039). She opined,

> The overall presentation appeared valid and generally consistent with the reported conditions. [Plaintiff] has a documented history of addiction and depression. Symptoms related to the suggested bipolar disorder and paranoia were not present during this evaluation and could not be validated. Additional records from her past psychological treatments may help to validate those diagnoses. The mental health symptoms based on report and clinical observations appear to be moderately to severely impacting activities of daily living, vocational performance, and interpersonal interactions. Current prognosis for [Plaintiff] is guarded.

(Tr. 1039). On the Medical Source Statement, Dr. Faulkner opined that Plaintiff had the following functional limitations:

- "extreme":
    - carry out complex instructions and
    - make judgments on complex work-related decisions;

- "marked":
    - make judgments on simple work-related decisions,
    - understand and remember complex instructions,
    - interact appropriately with the public, supervisors, and co-workers, and
    - respond appropriately to usual work situations and to changes in a routine work setting.

(Tr. 1041-42).

In his decision, the ALJ explained the weight he accorded this opinion as follows:

> The undersigned affords little weight to the psychological consultative evaluator's medical source statement (MSS) at exhibit B7F. Namely, as indicated above, the claimant's mental status examination was fairly normal and showed adequate memory, intel1igence, attention and

concentration, yet the examiner rated the claimant as "impaired" in social interaction, found "marked" limitations in the claimant's ability to make judgments on simple work related decisions, ability to interact with the public, coworkers and supervisors, and ability to respond appropriately to changes in routine work setting. Put simply, these conclusions are not only inconsistent with the findings at exhibit B7F, but also the remainder of the record, which shows the claimant to be capable of shopping independently, handling her finances, caring for her mother, attending weekly AA and NA meetings and church, and serving in a ministry that cares for the homeless. Furthermore, this MSS is inconsistent with the claimant remaining free of any drugs and alcohol, doing so well on her parole that she was released early, and not running afoul of the law (hearing testimony). Finally, the conclusions in this MSS are inconsistent with how well the claimant came across under clear pressure during both the hearing as well as the initial disability intake where no problems whatsoever were noted (B2E).

(Tr. 20-21).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Social Security,* 631 F3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In this case, the Court finds that substantial evidence supports the ALJ's decision to accord little weight to Dr. Faulkner's opinion. As Dr. Faulkner was not a treating psychologist, but a one-time consultative examiner, her opinion was not entitled to any special deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The ALJ gave good reasons, supported by substantial evidence, for giving less weight to Dr. Faulkner's opinions. The ALJ found Dr. Faulkner's

opinions deserved little weight because her conclusions were internally inconsistent and were contradicted by the record (Tr. 20). First, the ALJ noted that despite Dr. Faulkner's opinions of several "marked" and "extreme" mental limitations, she noted Plaintiff timely appeared to the examination and demonstrated good basic grooming and hygiene. (Tr. 18, 1037). Plaintiff also answered all questions presented, gave specific information and dates without difficulty, and displayed a positive attitude. (Tr. 1037). Plaintiff's cooperation and effort were appropriate, and the information she provided appeared reliable and accurate. (Tr. 1037). She was alert, oriented to person, place, situation, and time, and Dr. Faulkner observed Plaintiff's rate and quality of speech were unremarkable, and the content was relevant, coherent, and logical. (Tr. 1039). Finally, she noted Plaintiff demonstrated fair attention and concentration, and that Plaintiff's immediate and remote memory appeared adequate. (Tr. 1039). The ALJ noted all of these inconsistencies in discounting Dr. Faulkner's opinions about Plaintiff's mental functioning (Tr. 18, 20-21), and these internal inconsistencies were a proper consideration.

The ALJ also noted Dr. Faulkner's conclusions were inconsistent with the record as a whole (Tr. 20). Before Plaintiff went to prison, her mental status examinations noted she had average hygiene; she was cooperative; she had no hallucinations; and her affect, thought content, attention, impulse control, judgment, and psychomotor activity were all within normal limits or adequate. (Tr. 455, 463, 466-67, 472). Further, while Plaintiff was in prison for five years, her records indicated medication controlled her mental conditions. (Tr. 555, 559, 600, 686, 728, 731, 750, 813, 962). Those records also noted Plaintiff had average intellect, unremarkable behavior, and good or fair reasoning, judgment, thought content, and insight, and she was also orientated to place, time, and situation. (Tr. 539, 549-50, 559-60, 603-04, 686, 728, 731-32, 750 51, 813-14, 962). Finally, records in 2016 described Plaintiff's mental status as appropriate with normal or

appropriate speech, thought, judgment, and insight. (Tr. 1017, 1032). Thus, as the ALJ pointed out, Plaintiff's records consistently indicated she had adequate memory, intelligence, attention, and concentration, which contradicted Dr. Faulkner's opinion that she had "marked" limitations with her ability to make judgments on simple work-related decisions and in responding appropriately to usual work situations and changes. (Tr. 20, 1041).

Plaintiff has failed to show that the ALJ erred by rejecting the opinion of one-time examiner Dr. Faulkner. Accordingly, the Court affirms the ALJ's decision to give Dr. Faulkner's opinion little weight.

**(c) Whether the ALJ erred by improperly rejecting Plaintiff's allegations.**

Because the ALJ's evaluation of Plaintiff's RFC may change upon remand, the Court finds it appropriate to defer at this time from addressing the issue of whether the ALJ erred in analyzing Plaintiff's credibility.

### III. Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED.** On remand, the Court will require the ALJ to order a consultative medical examination to determine the functional limitation caused by Plaintiff's thoracic spine abnormalities. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on February 22, 2019.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties